WILLIAM H. MENKING, APPELLANT, V. ARTHUR W. LARSON, APPELLEE.

FILED JULY 18, 1924. No. 22823.

1. **Torts: JOINT TORT-FEASORS: SETTLEMENT WITH ONE: ORAL EVIDENCE.** "Settlement with one of several joint wrongdoers and payment of damages is not a defense to an action against another, unless it was agreed between the parties to the settlement that such payment was in full of all damages suffered. If the settlement is in writing, oral evidence is competent to show the intention of the parties thereto in an action against one not a party to the settlement." *Fitzgerald v. Union Stock Yards Co.,* 89 Neb. 393.

2. **Principal and Agent: FRAUD OF AGENT.** A provision in a contract for the purchase of real estate, to the effect that vendee agrees that he has made personal inspection of the property covered by the contract and is buying it solely on his own investigation and not on any representations made by any one else as to any material matter affecting such property or his purchase thereof, will not relieve the vendor, or his agent, from responsibility for fraudulent representations, made by vendor's agent, concerning the subject-matter of the contract, for the agent has ostensible authority to make representations as to the subject-matter of the sale, and his fraud, committed within the limits of such authority, will fix responsibility both upon the principal and the agent.

APPEAL from the district court for Fillmore county: RALPH D. BROWN, JUDGE. *Affirmed on condition.*

*F. B. Donisthorp,* for appellant.

*Waring & Waring, contra.*

Heard before MORRISSEY, C. J., DEAN and GOOD, JJ.,
BLACKLEDGE and REDICK, District Judges.

GOOD, J.

This is an action upon a promissory note by the holder,
an indorsee, against the maker. Defendant in his answer
alleged that the note was given in part payment of the pur-
chase price of land in Colorado, and that he was induced
to make the contract of purchase by fraud and misrepre-
sentations practiced by the vendor and its agents, and set
up a counterclaim for damages, alleging that plaintiff was
one of the agents of the vendor who made the misrepre-
sentations and induced the making of the contract, and
that the vendor and plaintiff were joint tort-feasors. The
trial resulted in a verdict for defendant in the sum of
$3,000 on his counterclaim, and relieving him of liability
on the note in controversy. Plaintiff appeals.

The facts disclosed by the record, so far as necessary to
an understanding of the questions for determination, may
be summarized as follows: The Twin Lakes Land & Water
Company (hereinafter referred to as the land company) was
engaged in selling lands and water rights for irrigation
purposes in Crowley county, Colorado. Menking, the plain-
tiff, resided in Fillmore county, Nebraska, and was agent
for the land company. He and the defendant were well
acquainted and had had other business dealings, and the
defendant reposed confidence in the integrity of the plain-
tiff. In January, 1918, plaintiff, with other agents of the
land company, induced the defendant, also a resident of
Fillmore county, with other prospective purchasers, to visit
the Colorado land. The party arrived at the village of Man-
zanola, Colorado, were met at the train by automobiles and
taken over some of the land owned by the land company
and made a casual examination. At that time there was
about six inches of snow on the ground. They were taken
to the home of one Bowers, an alleged prosperous farmer
in the vicinity, who, it later developed, was also an agent

Menking v. Larson.

or employee of the land company. There they had the evening meal and remained over night. The next morning they again visited the land and then returned to the Bowers home, where defendant executed a contract to purchase 240 acres of land for the price of $150 an acre. He paid $3,000, in cash or by check, and gave a series of notes, aggregating $33,000, for the remainder of the purchase price. On the trip from Nebraska to Colorado and while there, defendant was kept constantly in the company of the agents or employees of the land company and was not given an opportunity to see or make inquiries from disinterested parties about the land. Plaintiff and the other agents represented to defendant that the land was of a high character of chocolate loam and would produce bountiful crops; made representations as to the amount of wheat, oats, corn and other crops that could be grown upon the land, and as to the supply of water for irrigation purposes, and other facts that would materially affect the value of the land, and induced the defendant to believe that the land was a bargain at $150 an acre. Later the defendant, on ascertaining facts that led him to believe that he had been defrauded, employed an attorney, who effected a settlement with the land company. This settlement provided that the contract of purchase should be canceled, and all of the defendant's notes, except two, aggregating $2,800, were returned to defendant. The two notes which were not returned to the defendant were not then in the possession of the land company. One of these notes, for $1,800, is the one in controversy in this action.

The defendant was not present when the contract of settlement between defendant's attorney and the land company was effected. That contract is in writing and is in part as follows: "In further consideration of first party surrendering to second party the notes executed by second party and running to first party in connection with the purchase of said land, with the exception of said two notes aggregating $2,800, and in consideration of each of the parties hereto releasing, relieving and discharging the oth-

er of said parties from any and all liabilities whatsoever growing out of the purchase of said described premises and water rights and any and all payments made thereunder, it is agreed between the parties hereto in manner following, that is to say:

"First party shall surrender and deliver and does hereby surrender and deliver unto second party all the promissory notes executed by second party as aforesaid and given to first party in connection with the purchase of said described lands and water rights, with the exception of said note No. 3036 in the sum of $1,000 and said note No. 3037 in the sum of $1,800, and releases and discharges said second party, his heirs and assigns from any and all claims and demands of every nature whatsoever growing out of said contract of purchase and said promissory notes.

"Second party accepts said notes in full settlement and satisfaction of any and all claims and demands of every character whatsoever which he has, claims or holds against first party growing out of the execution and delivery of said contract of purchase, the execution and delivery of said promissory notes and contract, and the cash payment made on account thereof.

"It is mutually agreed between the parties hereto that the contract of purchase executed in duplicate by the parties hereto covering the premises and property above described shall be surrendered and canceled."

Plaintiff insists that this contract of settlement was a complete accord and satisfaction of any cause of action for damages against either the land company or plaintiff, and that it contemplated that the defendant should pay the note in controversy, together with the other note for $1,000, as a part of the settlement. Defendant, on the other hand, contends that the settlement with one joint tort-feasor, whereby he is relieved from liability, does not relieve the other tort-feasor from liability, unless the settlement effected was intended to be of the entire cause of action.

The rule applicable to the situation that obtains in this state is clearly set forth in *Fitzgerald v. Union Stock Yards*

*Co.,* 89 Neb. 393, as follows: "Settlement with one of several joint wrongdoers and payment of damages is not a defense to an action against another, unless it was agreed between the parties to the settlement that such payment was in full of all damages suffered. If the settlement is in writing, oral evidence is competent to show the intention of the parties thereto in an action against one not a party to the settlement; affixing a private seal to such writing is without effect." This rule has been followed and reaffirmed in *Hauth v. Sambo,* 100 Neb. 160, and *Tankersley v. Lincoln Traction Co.,* 101 Neb. 578.

We think it will not be controverted that the terms of the settlement contract, standing alone, are sufficient to indicate that it was the intention of the parties to make a complete settlement of the cause of action. But, under the rule as above announced, in an action against one who is not a party to the contract of settlement, parol evidence is admissible to show the intention of the parties. In the instant case, parol evidence to explain the intention of the parties to the settlement was offered, wherein it was disclosed that it was not the intention of the parties that defendant should be liable upon the two promissory notes, not then in the possession of the land company. This testimony is uncontradicted and is to the effect that it was the understanding of the parties that defendant would not pay the two notes which were not surrendered. The reservation went no further than this. The contract must, therefore, be held to be a complete settlement of the cause of action, except as to the right of defendant to make a defense to the two notes, one of which is the note in controversy in this action.

We conclude, therefore, that the court erred in submitting to the jury the question of the right of the defendant to recover upon the counterclaim, and that the judgment in favor of defendant on his counterclaim is not supported by the evidence. It is quite plain that if the land company had retained possession of and brought suit upon the note in question it would not be entitled to recover.

The effect of the settlement contract, as explained by oral evidence, was to reserve to the defendant the right to make any defense he might have to the note for $1,000 and to the one on which plaintiff's action is founded.

The contract of purchase between the land company and defendant contained this clause: "First party states and agrees that he has made personal inspection of the property covered by the within contract, and is buying it solely on his own investigations, and not on any representations made by any one else as to any material matter affecting said property, or his purchase thereof." Plaintiff insists that this clause in the contract cannot be varied by parol testimony, and that it effectually bars defendant from maintaining any action for damages for fraud or deceit, and also deprives him of any defense on those grounds to the notes given as part of the purchase price.

In *Schuster v. North American Hotel Co.*, 106 Neb. 679, it is held: "A provision in such a contract, to the effect that the agent cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, made by its agents, concerning the subject-matter of the contract, as distinguished from the agreements and promises which are to be undertaken, for a sales agent has ostensible authority to make representations as to the subject-matter of the sale, and his fraud, committed within the limits of such authority, will fix responsibility upon his principal." See, also, *Stroman v. Atlas Refining Corporation, ante,* p. 187.

If the effect of such a clause will not relieve the principal from liability for fraud or deceit practiced in obtaining the contract, we think it is quite clear that it will not relieve the agent who made the representations and practiced the fraud or deceit. The recital in the contract does not even purport to protect any one other than the party to the contract, and the agent committing the wrongful act cannot shield himself from his wrongdoing by such a clause in the contract of his principal.

Plaintiff argues that the evidence is insufficient to sustain the charge that the note was obtained by fraud and deceit. We have examined the record, and, while there is a conflict in the testimony, there is ample evidence tending to show that defendant was grossly deceived and defrauded in the transaction. It is evident from the whole record that he will lose the $3,000 cash payment that was made, as well as the $1,000 note which he has been compelled to pay to an innocent holder, and that he has received absolutely noth-i..g for the note in controversy. That plaintiff is not an innocent holder in due course is plainly evident. The question was one for the jury, and the verdict thereon is conclusive.

Complaint is made of a number of instructions of the court, but we find no error in them save in those which submitted to the jury the right of defendant to recover on his counterclaim. Complaint is also made of rulings on admission of evidence. We have examined the record and find no error in this respect.

Because of the error of the court in submitting to the jury the right of defendant to recover on his counterclaim, the judgment must be reversed and the cause remanded for a new trial, unless defendant shall, within 20 days, file a remittitur of the whole of the judgment on his counterclaim. If such remittitur is filed, the judgment will be affirmed; otherwise, reversed and remanded.

AFFIRMED ON CONDITION.

Note—See Agency, 2 C. J. p. 856, sec. 541; Compromise and Settlement, 12 C. J. p. 344, sec. 37; Evidence, 22 C. J. p. 1292, sec. 1725.